## HENRY LOVELACE v. THE STATE.

1. CRIMINAL LAW. *Fraudulent appropriation.* If the contract of hiring a horse takes place in another State, and the horse is received there and brought into this State, and converted and appropriated, the defendant can be convicted of fraudulent appropriation in this State. The fraudulent appropriation would not relate to the original hiring.

2. SAME. *Same. Evidence.* A postal card in relation to the horse fraudulently appropriated, found upon the person of defendant addressed to another party, is competent evidence though not proven to have been written by the defendant.

### FROM BEDFORD.

Appeal in error from the Circuit Court of Bedford county. ROBERT CANTRELL, J.

W. H. WISENER for Lovelace.

ATTORNEY-GENERAL LEA for the State.

COOKE, Sp. J., delivered the opinion of the court.

The defendant was indicted and convicted in the circuit court of Bedford county, and has appealed to this court.

The indictment contained three counts: One for horse-stealing, another for bringing a horse which he had stolen into Bedford county, and the third for a fraudulent breach of trust by fraudulently appropriating to his own use, etc., a horse which he had hired of one A. D. Rogers, the keeper of a livery stable in the city of Huntsville, in the State of Alabama, to be by the defendant ridden to the town of Fayetteville and returned in two days, etc.

The testimony showed that the prisoner did hire the horse of the prosecutor in Huntsville, in the State of Alabama, to ride to Tennessee, and to be returned in a few days. And it is insisted here, as it was in the court below, that as the contract of hiring the horse was in Alabama, and as he was received by the defendant in that State, and brought into this State, and converted and appropriated in Bedford county, the fraudulent appropriation would relate to the original hiring, and would not constitute an offense punishable in this State. And we are referred to the legislation and decisions in regard to bringing stolen property into the State as sustaining this position. We do not concur in this.

By the act of 1841, ch. 48, sec. 1, (sec. 4701 of the Code), it was provided that any person who by any false pretense, etc., with intent to defraud another, obtains from any person any personal property shall, on conviction, be imprisoned in the penitentiary, etc. And by section 3 of the same act, Code, sec. 4704, the words "false pretense" includes all cases of pretended buying, borrowing or hiring, bail-

ment or deposit, and all cases of pretended owner-
ship, where the person obtaining possession intended,
at the time he received the property, feloniously to
steal the same. As by the terms of this act the
intention to steal must exist. at the time the pos-
session of. the property is ·obtained in order to con-
stitute a felony, and the fact that the fraudulent ap-
propriation of personal property where the felonious
intent did not exist at the time of the bailment led
to the enactment of the provisions of sub-section 1
of section 17 of the act of 1855–6, by which it was
enacted that "the fraudulent appropriation of personal
property or money by any one to whom ·it has been
delivered on · deposit, pledge, sequestration, . or to be
carried or repaired, or in whose hands or under whose
control it may be by his position as clerk, agent, fac-
tor or bailee, or on any other contract or trust by
which he was bound to deliver or return the thing
received, or its proceeds, is a fraudulent breach of
trust." Code, sec. 4712.

Under this section it is the fraudulent appropria-
tion of the property which constitutes the offense, and
not the hiring or obtaining, possession as bailee, and
consequently the place. where this is done is the place
where the offense is committed and where it is . pun-
ishable.

In this case the defendant rode the horse into the
town of Shelbyville, in Bedford county, where he
procured an auctioneer to sell him at public outcry,
and. took the proceeds of the sale and left upon the
next train, and was arrested on the next day in Chat-

tanooga.    The place of the termination of the bail-
ment and fraudulent appropriation of the property was
thus shown conclusively to have been at Shelbyville.
Besides by the defendant's own admissions, which is
proved in the record, he stated that he had hired the
horse from one Rodgers at Huntsville, Alabama, to
to ride a few days; when he got to Shelbyville he
was strapped, and sold him to get money to go to
East Tennessee, etc.    We think there is nothing in
this objection.

When the defendant was arrested he had on his
person and in his possession a postal card, upon which
was written the following:  " Riverside Farm, Lincoln
county, Tenn., Dec.  Some one has taken your horse from
the stable or he has bolted.   I think he is making a circuit
for the Mississippi bottoms or Arkansas.    Although
he was seen going towards Stevenson, Alabama.    If
you do not see or hear from me in three days, meet
me or send a detective to Stephenson.    Yours, very
truly, addressed  Mr. Rogers, Huntsville, Ala."

This postal card, after having been proved to have
been found on his person by the officer who searched
him, was permitted to be read to the jury over the
objection of the defendant, without any proof that it
was his handwriting.    And this it is insisted was
error.

As this card, whether it was in his handwriting
or not, was kept by him in his possession, he is pre-
sumed to have known its contents, and as it evi-
dently had reference to the horse in question, it was
competent to go to the jury along with the other

State v. Orr, Trustee.

testimony for what it was worth, especially as he made no attempt to explain his possession of it. It was, therefore properly admitted. The whole volume of the testimony makes out as clear a case of guilt against the defendant as could well be imagined. There is no error in the record, and the judgment is affirmed.